# Matter of M-S-I-, Respondent

*Decided by Board March 27, 2025*[1]

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The acquiescence standard for protection under the regulations implementing the Convention Against Torture differs from the unable-or-unwilling standard for asylum and withholding of removal; the potential for private actor violence coupled with a speculation that police cannot or will not help is insufficient to prove acquiescence.

FOR THE RESPONDENT: Khagendra Gharti Chhetry, Esquire, New York, New York

BEFORE: Board Panel: MALPHRUS, Deputy Chief Appellate Immigration Judge, CREPPY and PETTY, Appellate Immigration Judges.

PETTY, Appellate Immigration Judge:

This case is before the Board pursuant to the June 13, 2024, order of the United States Court of Appeals for the Fifth Circuit granting the parties' joint motion to remand for further proceedings. The respondent has filed a brief following remand. The appeal will be dismissed.

This case was last before us on February 20, 2024. The respondent, a native and citizen of Nepal, appealed from the Immigration Judge's decision dated November 6, 2023, denying his applications for asylum and withholding of removal under sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A) (2018), and protection under the regulations implementing the Convention Against Torture ("CAT").[2] In our February 20, 2024, decision, we agreed with the Immigration Judge's conclusion that the respondent had not suffered past persecution, and we concluded that the respondent had not

---

[1] Pursuant to Order No. 6263-2025, dated May 12, 2025, the Attorney General designated the Board's decision in *Matter of M-S-I-* (BIA Mar. 27, 2025), as precedent in all proceedings involving the same issue or issues. *See* 8 C.F.R. § 1003.1(g)(3) (2025). Editorial changes have been made consistent with the designation of the case as a precedent.

[2] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States on Nov. 20, 1994).

shown a fear of future persecution independent of the past harm. We also determined that the respondent had waived any challenge to the Immigration Judge's finding that he had not satisfied the government acquiescence requirement for protection under the CAT.

On June 13, 2024, the Fifth Circuit granted the parties' joint motion to remand, requesting that we revisit or clarify our determination regarding the respondent's fears of future harm and reassess whether the respondent had waived his challenge to the Immigration Judge's determination as to the state action requirement of CAT.

The respondent's claim centers on his fear of individuals affiliated with the Maoist Party, who he alleges assaulted, threatened, and searched for him because of his political opinion. The Immigration Judge found, inter alia, that the respondent had not suffered harm constituting past persecution, had not established that the Nepalese government would be unable or unwilling to protect him, and had not shown that officials would acquiesce to his torture in Nepal.

Consistent with the motion underlying the Fifth Circuit's remand order, we will only address the issue of future persecution and the application for protection under the CAT.[3] As the respondent is seeking relief from removal, he bears the burden to establish that he satisfies the eligibility requirements for asylum, withholding of removal, and protection under the CAT. *See* INA § 240(c)(4), 8 U.S.C. § 1229a(c)(4) (2018); 8 C.F.R. § 1240.8(d); *see also* INA §§ 208(b)(1)(B)(i), 241(b)(3)(C), 8 U.S.C. § 1158(b)(1)(B)(i), 1231(b)(3)(C); 8 C.F.R. § 1208.16(c)(2) (2025). We review de novo whether the respondent has satisfied his burdens of proof. *See* 8 C.F.R. § 1003.1(d)(3)(ii) (2025).

We affirm the Immigration Judge's determination that the respondent did not meet his burden for asylum or withholding of removal under the INA. The Immigration Judge found that the respondent, who did not show that he was targeted by anyone other than private actors, did not demonstrate that the Nepalese government was or would be unable or unwilling to protect him. We affirm this finding on the basis it is not clearly erroneous. *See Matter of C-G-T-*, 28 I&N Dec. 740, 743 (BIA 2023) (explaining that whether the government is or was unable or unwilling to protect a respondent from harm is a question of fact the Board review for clear error).

---

[3]  To the extent the respondent renews his argument that the harm alleged constitutes past persecution, we decline to disturb our prior analysis of this issue.

The Immigration Judge noted the respondent's testimony that he decided not to report his assailants to police because the assailants threatened him and because his party leaders told him it would be fruitless. However, the Immigration Judge found these facts insufficient to form a basis for not reporting the harm to police and noted that it did not allow the Nepalese authorities any opportunity to take action against the perpetrators. In reviewing the country conditions evidence, the Immigration Judge also found that the record reflected that the respondent's political party and the Maoist Party had been working together on social justice issues.

In his post remand brief, the respondent asserts that authorities do not take political cases seriously and explains that the Maoist Party is affiliated with the Prime Minister and has influence. Those facts alone do not establish error in the Immigration Judge's finding that the Maoist Party has demonstrated a willingness to work with the respondent's political party. The respondent cites to various out-of-circuit cases to argue that he was not required to report the alleged harm to authorities to meet his burden, but those cases are not binding. Nor is the respondent's citation to *Matter of S-A-*, 22 I&N Dec. 1328 (BIA 2000), persuasive given that the particular societal constraints imposed upon that respondent render the facts of her case distinguishable from this respondent's case. Ultimately, the Fifth Circuit has stated that, "one would be hard-pressed to find that the authorities were unable or unwilling to help [the respondent] if [he] never gave them the opportunity to do so." *Sanchez Amador v. Garland*, 30 F.4th 529, 534 (5th Cir. 2022).

In light of the record evidence showing the Maoist Party's willingness to work with others, including the respondent's opposing political party, and the respondent's failure to report the alleged harm to authorities, we cannot conclude that the Immigration Judge's factual finding is clearly erroneous and that the respondent has met his burden on this issue. As the respondent has not shown that Nepalese authorities were or would be unable or unwilling to protect him, we affirm the conclusion that the respondent has not met his burden for asylum or withholding of removal under the INA. *See Orellana Monson v. Holder*, 685 F.3d 511, 518 (5th Cir. 2012).

Next, we acknowledge that the respondent has sufficiently challenged the Immigration Judge's determination that he did not show the requisite state action for CAT. However, we will affirm the Immigration Judge's conclusion that the respondent did not establish that it is more likely than not that he will be tortured by, at the instigation of, or with the consent or acquiescence, to include willful blindness, of a public official or other person acting in an official capacity. *See* 8 C.F.R. §§ 1208.16(c), 1208.18(a)(1);

*see also Tibakweitira v. Wilkinson*, 986 F.3d 905, 911 (5th Cir. 2021) (discussing a respondent's burden of proof under the CAT). Acquiescence to torture requires that public officials remain willfully blind to torturous conduct and breach their legal responsibility to prevent it. *See Iruegas-Valdez v. Yates*, 846 F.3d 806, 812 (5th Cir. 2017); *Hakim v. Holder*, 628 F.3d 151, 155 (5th Cir. 2010).

The respondent's CAT claim relies upon stringing together a series of suppositions. *See Matter of J-F-F-*, 23 I&N Dec. 912, 917–18 (A.G. 2006) (explaining a respondent cannot establish eligibility for CAT protection where the evidence "does not establish that any step in th[e] hypothetical chain of events is more likely than not to happen, let alone that the entire chain will come together to result in the probability of torture of respondent").

The respondent's argument as to official acquiescence rests upon his assertions that the Nepalese police are corrupt and act with impunity, and Maoists are powerful and connected to the government. The respondent also argues that "in the context of the Nepali Civil War, the Nepal government was unable, unwilling or willfully blind to control the Maoists, and that filing a police report would have been futile.". To start, the acquiescence standard for CAT protection differs from the unable-or-unwilling standard for asylum and withholding of removal; the potential for private actor violence coupled with a speculation that police cannot or will not help is insufficient to prove acquiescence. *See Garcia v. Holder*, 756 F.3d 885, 892 (5th Cir. 2014). The respondent's citations to out-of-circuit cases do not persuade us otherwise. In addition, to the extent the respondent's argument is dependent upon the context of the Nepali Civil War, we fail to see how the argument applies to the present likelihood of torture and official acquiescence.

Moreover, as the Immigration Judge found, the respondent never reported any past harm and thus there was no past official acquiescence, and the respondent has not established that the assailants who harmed him were anything more than private actors. The Immigration Judge also found that the respondent's political party has more members in Parliament than the Maoist Party. While the respondent's argument hinges on a series of suppositions that culminate in a conclusion that Nepalese officials would acquiesce to his torture, the evidence reflecting corruption and impunity in the Nepalese police force or that Maoists hold power does not inherently mean that authorities would be willfully blind to private actors torturing this respondent, whose political party also wields notable political control. We agree that the facts of this case, coupled with the respondent's failure to connect generalized assertions of corruption and impunity to the details of

his particular circumstances, do not establish that public officials in Nepal are more likely than not to acquiesce to his torture. *See Tamara-Gomez v. Gonzales*, 447 F.3d 343, 351 (5th Cir. 2006); *see also Tabora Gutierrez v. Garland*, 12 F.4th 496, 504 (5th Cir. 2021). Based on the foregoing, we affirm the Immigration Judge's conclusion that the respondent has not met his burden for protection under the CAT.

As the issues discussed above are dispositive, we decline to address the other arguments raised. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

Accordingly, the following order will be entered.

**ORDER:** The respondent's appeal is dismissed.

**NOTICE:** If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* INA § 274D, 8 U.S.C. § 1324d (2018); 8 C.F.R. § 280.53(b)(14) (2025).